24-2068 Salgado v. Smith I'd like to use reserve four minutes of rebuttal if I may It's less than five Good morning Judge Hart's judge Phillips and judge I'd I'm Jameson Barkley I'm here on behalf of plaintiff appellant Angelique Salgado the mother of Jonathan Molina Angelique Salgado is here with us today We're here to ask the court to reverse the district court Because a reasonable officer would know that when a suspect is subdued you don't shoot again Jonathan Molina was killed by defendant officer Smith at a traffic stop wherein he was the passenger and The officer after having shot Jonathan Molina one time in the chest the officer Step back behind the car six to eight seconds passed and Then he comes back and finishes the job and shoots Jonathan seven additional times comes back Didn't he fire from the back? Well, I'm very glad that you asked that and I think that's really the central idea and that's really where the district court got it wrong if you look at the video and I've heard you say this morning you've watched lots of videos so I assume you have the Car that was stopped was a Honda Del Sol. It's a tiny car. It's a blue car. It's got two seats in it and the officer after With a little leeway, I'm going to show you kind of how the action unfolded There's a scuffle The officer is inside the passenger compartment for a minute and during that time He's punching Jonathan and we know that Jonathan died Not only of the gunshot wounds, but of blunt force trauma a gun goes off There's no evidence of intentional discharge The officer emerges from the passenger compartment Shoots Jonathan. He's holding him down with his left hand. He shoots him with his right hand in the chest He steps back And he steps back along the passenger side of the car he goes to the back of the car These six to eight seconds pass Excuse me While he's at the back of the car, he says in his testimony that he determined to end the threat He says he's determined to end the threat so he's at the back of the car And he steps out and he fires here here here Here here seven times. So he's actually as he's firing He's walking alongside of the passenger side of the car and the passenger door is open The officers been shot already to the officer was shot Inside He ends up biting Jonathan There's an unintentional. There's a discharge of a firearm and there's no I'm sorry Let's focus on the key point that you made at the outset. Sure that he the officer cannot shoot a Did he know that Salgado was was subdued and he Is there did he know when he shot Salgado that Salgado was mortally wounded Looking at the video your honor. He of course he knew that he again Like I said, he's holding him with one hand and he shoots him down at the chest The testimony as he shoots down into mr. Molina's center mass high center mass, that's where they're trained to shoot and The evidence in the record we know Jonathan Molina had two gunshot wounds to the chest So one that first one hit the chest The officer sees the impact of that he steps again steps away and then after six seconds Then he says Come out with your hands up or something like that After the first shot before the next six He says something to Salgado. Does he not I know he does not say anything before the second shot He just starts shooting At the back of the car he takes one shot And he just keeps shooting you didn't say one word about come out drop your gun and come out right now I do believe he was yelling There was some curse words if you've seen the video that the audio is very garbled so you can catch a word every now And then so he was screaming. He was yelling something. He was yelling show me your hands Which is how you don't get shot as if the other person shows their hands sure, but and no hands were shown Well, but that's not exactly right Because what happened was at the beginning he can't see the hands but as he's walking around here the passenger doors open the officer testified at his statement the Statement that he gave that morning that he saw Jonathan that Jonathan was not trying to escape out of the vehicle and That he did not see that small-caliber weapon, but shouldn't the officer in that situation this very unfortunate situation shouldn't the officer be concerned that Been shot once could be shot again Sure, your honor, but there has to be an analysis. That's just not you can't just say okay Well, but he had six to eight seconds And that's more than in Fanshawe in Fanshawe the officer had five to seven seconds here That was daylight Okay, and he saw him slump But you know your honor a jury could see the video in this case and ascertain that the officer saw Jonathan slump as well So it was so close to him your honor couldn't have not seen that what should the officer have done knowing that ambulance service is required Sure after the first after he shot Jonathan the first time yes, he should remain in cover he should Deal with the driver because he said he had a fear about the driver so handle the other the other person He should call for backup. That's the first thing he done. He'd never even called for backup at this point, but You can't wait for sunrise You've got a man who's bleeding and you're not gonna send the ambulance workers in there not knowing if the guy has a gun and He's still conscious So I don't see the good answer here for what is supposed to happen sure well I guess what I would say is I don't think that the record is clear that he didn't see the suspect He saw the suspect he was within a couple of feet of the suspect. What did what about the report? Did he not testify and doesn't his he had a body cam on no We I wish he did he had it there was a dashcam. Okay. Does the dashcam show? that Mr.. Salgado stuck a foot out of the door After he was shot what the dashcam shows is It's a foot flopping. It's an involuntary Movement and what I would direct the court's attention to is what? How is that visible what shows you you're looking at some sort of video that shows his foot flopping? Where what what is that video? Okay? So there's one basically there's one primary video in this case It was the dashcam of the police unit the police So does that so that The dashcam on the police vehicle does show mr. Salgado's Foot is there anything else? Of mr. Salgado's that appears outside the vehicle it goes out the right front door No, it's actually mr. Salgado. You barely see him He was in the passenger compartment the whole time until then his body's getting dragged out I do want to say that in the statement that he gave to the investigating officers the morning of the shooting He said that again. He saw mr. Molina, and this is in the record at 2 30. It's also in the record at 2 32 He saw mr. Molina, and this is again Because we know that he moved from the back of the car and the car if you look at the record Well, don't you want him to move from the back of the car and be craning his neck to see if There's if he's conscious or something in other words as soon as he saw he stopped firing. No, no, no, no No, that's not right. We'd have a bit We'd have a very different case if that were if that were the right if that were right, that's not at all Yeah, so you're maintaining that the record shows that After the gunshot where the officer is struck and he goes to the back of the car And he begins to swing around after your you I guess you're not saying he yelled put your hands up But as he makes his way around counterclockwise Firing the weapon that he continues to fire the weapon after he sees That's what our whole case is about all right, that's the case and looking at again the statement He gave the morning the morning of he says I pied to the right side of the vehicle Is he's sitting there is he lying across the front seat in some fashion We don't know but what well I'll tell you actually I guess I shouldn't say we don't know because when asked the officer said he saw Them sitting there. I saw him still sitting in the vehicle and The agent the state police said what was he doing? Did you see a firearm at that point? I don't I don't recall I Can't tell you what he was doing with it or where exactly it was at. But where does he say and I continued to fire? Well, we know he continued to fire because of the video and if you and again the statement is very pivotal it's the it's Before he had counsel before he is lawyer wrote him a 13-page affidavit to explain You know the best-case scenario He tells the investigators that morning that he killed he ended the deadly threat is what he said And he decided when he was at the rear of the vehicle before he Starts shooting and he's seeing as he comes around He's telling them the investigator that morning as I'm pying around. I saw Jonathan I saw him sitting and I didn't see a gun There's gunfire exchange and watching the video you see traffic going by. Is that a concern that an innocent? Motorist is going to get get one Well, I think that would be a concern on the part of the citizenry against the officer The officer is just firing wildly. Well, he doesn't shoot while the car goes by well, but he Gets an awful lot of shots off, doesn't he? and I think I think you're right and it's important to consider they are along I-25 the interstate and the car was when when the stop was initiated The driver pulled between an exit ramp and the southbound lanes, so he's in the area of the highway That's like hashed striped and there's traffic going by But the officer never articulated any fear about surrounding folks So that's not an issue here your honor the officer by his own words He said it was not based on any new information any new calculation of a threat We know that the law requires the officers reconsider the use for lethal force When a suspect is subdued and Fanshawe the Fanshawe case is directly on point here in the Fanshawe case the officer The officer shot the suspect also in the chest at close range Similarly, he was standing outside the vehicle with a suspect in the vehicle just like our case There were actually two loaded weapons because in that case the suspect was in the police vehicle So in Fanshawe there were two loaded weapons in the in the passenger compartment long guns Long guns, so it's much easier to see if you're going to get shot with the long gun in the daylight Sure, sure your honor, but the point is that there was a mean that there was weapon in the passenger compartment and so the the mere existence of a weapon in the passenger compartment does not provide for Additional use of force after he was subdued. He shot in the chest the officer had more time than in Fanshawe The affidavit in this case is a improper Attempt to insert the officer's subjective impressions of what happened. We know it's foundational that the standard of review is what would an objective officer do an Objectively well-trained officer and we know that the case law says it's our case law is replete with the requirement that police officers we Calculate the need for lethal force and when a suspect has been subdued you don't shoot again. What are we doing then? He's murdering this young man. I'm still searching for the answer to that question, which I agree is the correct one Which is what would a reasonable officer do and what is reasonably? Objective conduct that we tolerate Take cover you said so go behind the patrol car and crouch and Then what no, I mean he had he had cover behind the Honda. Well, you could get shot you could get shot Okay, but I still don't know how that solves the problem because the clock is ticking and a man is apparently mortally wounded and So you're just gonna wait it out Saving the life, but I think in the immediacy you call back up and I'm looking at this car and there's nothing happening So what does see in the video? There's there's screaming Jonathan screaming. What what does backup do? Join him crouching behind the automobile No, your honor that no then they secure the driver and I mean by this point then the officer is not feeling I don't think as If he needed to use that lethal force when he had backup, I mean, I don't know I think he went off the rails a long time before these seven shots in terms of what would a reasonable officer do a reasonable officer doesn't get in the passenger compartment of a two-seater car a reasonable officer doesn't bite a Reasonable officer again doesn't say okay I'm gonna go back and shoot another seven times to a man And again, this is not this is there's not like a bank robbery here, there's not a kidnapping there's not a rape He's a he's a passenger Yes Mr. Salgado screaming. Yes Was he screaming just before the second group of shots had he quit screaming by then No, my recollection is he started screaming on the second through eight shots as He's getting fired on and it's kind of coming around, you know, he's screaming. He's screaming Thank you. Thank you again, just based on the officer's own testimony, that's Reasonable reasonable jury could conclude with that and looking at the video That this just was not reasonable. We don't allow this Thank you Mr.  May it please the court. My name is Luis Robles and I represent the appellee in this case officer Kevin Smith. I wanted to begin with making three points, but I recognize that the exchange That was had moments ago caused me to pit it and to answer a central question that you judge hearts had identified and that is Exactly. What was happening? right after that first shot was fired and then ultimately when the volley of seven rounds then began Now fortunately, we have a video so we can actually see what the officer is doing And what's important about that first shot and I want to say something else. That's I think vitally important in the district court we argue that all of the use of force the punching the biting the the the efforts that that officer Kevin Smith tried to use in order to gain custody of this man was Objectively reasonable to include that first shot The state and the below abandoned those claims and thus what we're left with is the acknowledgement that that use of force was Constitutional and and the judge judge Herrera below says as much here plaintiff does not dispute officer Smith's Arguments that he did not violate the Fourth Amendment during the first part of his struggle with. Mr Molina, that is when he punched. Mr Molina in the head bit his arm and fired his first shot. Mr Molina rather plaintiff argues that mr. Smith officer Smith violated. Mr Molina's right to be free from excessive use of force when he shot. Mr Molina seven additional times after the shooting him for the first time So is there is this grand concession that everything leading up to those seven shots was? Constitutional and thus the argument that's made especially in the reply that officer Smith's actions pre-seizure actions are reckless must be abandoned because they gave up that argument down below now moving into that central argument, so we have Constitutional conduct by the officer. He fires one round He then has a malfunction. That's why he stops firing So and again I can go to mechanics but there's no need for that there is the effort that's undertaken to clear the Malfunction and he's also trying to move away from the simple line of fire because mr. You know, he has not disarmed. Mr Molina, mr Molina still has the gun which he shot the officer with and In order to lessen the threat not eliminate the threat But to create time the officer moves back and away from he gains a tactical advantage and all that really means is he has More time to decide what to do Now in that time with those six to seven seconds. The officer is Assessing I have a gun that doesn't work You know and he says in his deposition testimony as well as in his police interview and in the affidavit He did not know Whether mr. Molina had been shot or not and we can you know, I can steal man Was mr. Molina crying in pain during that time? Was he screaming in pain? He yelled He yelled Molina did yes, he did. Yes, he did. So would that indicate that he knew at least he'd shot him He didn't know maybe how much Molina was injured but Molina Screamed or yelled Wouldn't that indicate to officer Smith that he had at least hit him with the bullet That would be objective evidence from which a reasonable officer might conclude that I would I would I would agree with that But what officer Smith had to deal with is that he had not in again This is the part that I think is very interesting. We have someone who shot and Estates claimed that he was subdued. I think what they're really trying to say is Incapacitated but officer Smith had no way to determine in this tense a certain situation Whether one round actually incapacitated Mr. Molina such that he was no longer a threat again. The officer is dealing with a number of problems I'm in the line of fire. I have a malfunction I need to clear the malfunction and move out of this line of fire and I think to myself What case speaks to this more broadly and I think of I believe it is Trish Let me see if I did cite that Thomas versus do a stantee there You have an agent who is facing a vehicle that's driving towards the agent. The agent is struck He is hit he rolls over the hood of the vehicle and somehow he ends up standing on his feet and as the vehicle is Leaving when the vehicle is no longer an immediate or a serious bodily harm to the agent He fires and what the 10th Court 10th Circuit Court of Appeals say about the reasonables as such a decision again Objectively the vehicle was not going to strike him. It was moving away from but given that set of circumstances that agent Made a reasonable decision with the understanding of the really tremendous Disorienting effect of being hit by a vehicle here. We have a police officer who not only was shot Again, this is all in the record. He was worried about bleeding out Mr. Molina called out for his friend Brandon Smith to come and help him So the officer had to contend with another person who might attack him from behind and he was exhausted That's what he faced Mr. Molina was calling out for the driver of the vehicle Brandon Smith, okay And so there's two Smith's in this case the driver and the officer and that's why I named him as Brandon So call me I should just call him Brandon Brandon. He was calling out for Brandon to come and help while the officer has Trying to hold on to his gun was that was that before The first shot fired by the office. Yes It was during the struggle when officer Smith was trying to hold on to his own gun keeping in the holster and holding Mr. Molina's hand with the gun in it trying to prevent. Mr Molina from then pointing the muzzle of the weapon and shooting the officer a second time And I will posit this to this court having read all of it is this this court's opinions and deadly force cases There is no case That this court has decided where there is no more compelling set of facts. And what do I mean by that very bluntly? There is no case in which the violence Delivered against this officer was as life-threatening and as savage as what you see in this case so much like the agent in Thomas vs. Durastan T. You had an officer who was faced with this overwhelming Situation which would disorient any one of us and so being able to assess Did my one round not only strike but did it incapacitate? while trying to clear up a Malfunction and moving into the into a position where he had cover and concealment That's asking an awful lot of an objectively well trained officer to sit and wait Because in asking an officer to wait sit and assess You're asking the officer to stay in the line of fire To essentially expose himself to being shot a second time in this case. We know the manifest intentions of Mr. Molina, he already showed it. He shot my client now The estate would have you believe that it was an accidental discharge But that runs counter to just simple common sense an officer is struggling with the criminal suspect Who's an absconder who's headed back to prison? He said as much and he and he feels And he hears the sound he feels the searing pain He thinks at first he was hit with his own taser And then he sees and he doesn't even understand how he got that way. He's holding. Mr. Molina's hand with the gun in it To think that the gun Accidentally went off when the struggle began with that with the gun not being visible is asking this court to Well accept the argument of an attorney as opposed to you know The facts being viewed in the light most favorable to the plaintiff now Another aspect of this case and you had asked about the French air fan chair case The Kate the facts in this case are so much more compelling about the danger which mr Molina faced and the deputy faced in the fan chair We had a deputy in the fan chair case who saw his round caused the driver the suspect to slump and Then the vehicle and fan chair began to move in reverse and the deputy testified that he felt safer and more importantly as a court noted in fan chair that when the vehicle was moving away the officer noted that the Suspect was not reaching for the guns that were in the front seat So that officer had objective information upon which he could base his decision That the suspect was no longer a deadly threat and deadly force wasn't warranted Here we have something much much much more ambiguous with the underlying compelling facts that I've described for you previously and the fact that in an order for the officer in order to Determine and put himself in a position where his safety, you know was at least There was more safety behind the vehicle than there was next to the passenger seat The officer could not see but fortunately while we have in this case for my client is he did give a verbal command And the words are and again I can't say them in this courtroom But put your frickin hands up and of course he used the different words in the word I'm using and that happened approximately two to three seconds before the first round of the seven round ball. He was fired Now could he see that just looking at the video first of all, it's a very narrow rearview window Yes, and on the video, which probably doesn't capture it exactly how it was if you're standing there It's hard to tell if anything is in the car. It could if he raised his hands with the officer have seen them I would say no that windows were tinted and then you have the officers take down lights as well as the headlights hitting a tinted It's black and much and so I can say that And I also the video shows that so it's is it conceivable that mr. Molina raised his hands It's conceivable. Well when the foot comes out might that have been his Effort to try to raise his hands to get out of the car and show his hands or is that stretching it? The Way I would think about it is that if mr. Molina wanted to show his hands We know he has had run-ins with the police. He was going back to prison. So it's not as if we had someone who had no Understanding of how these things work in the real world He could have put his hand or hands out of the vehicle Instead the leg came out I don't know if you what his condition was if he was capable of that having been shot in the chest, maybe If the officer knew I would agree with you that he would not that the officer should have waited But because the officer didn't know and and that's what's in the record. The officer did not know where whether his round struck Mr. Molina much less that he was incapacitated by the ground, you know and then we have this whirlwind of bewildering stressful facts that he was trying to contemplate with he can make a Mistaken decision. Maybe mr. Molina did raise his hands. Maybe mr Molina did want to surrender but as this court said in Wilson versus Meeks, you know An officer can't look in this and can't read someone's mind or look into their heart to determine what their true intent is All they can do is base their decision based on the objective facts that they know. What's it? What about counsel's? Statement if I understood it correctly, and if I didn't I apologize that The officer saw him in the car and continued to fire What's the record show there the way I would have this court address that is when you look at the video That's not what happened It's just When you I don't know how else to say where is he? Where is he standing at the last gunshot? so Imagine if you would that the rear view that the Back windshield of the vehicle is the podium and what you have before you is an officer who shoots and he moves But he stays behind the vehicle He does not begin to then move back into and again Again, that would be reckless to move back into a line of fire and put himself in a position where mr Molina could just simply raise a hand with a gun in it and shoot him Well, if he did if he fired after seeing mr. Molina splayed out or in whatever posture Would that be a Fourth Amendment violation it would if only the video showed such events so you're saying when Officer Smith after making you firing the first shot through the back window He didn't start walking around the vehicle and shooting as he did that. He just moved over to the side of the rear, but he if the He didn't if the vehicle is pointing north. He wasn't moving north of the back side of the vehicle is what you're saying Yes, I see that my time has ended my answer your question He moves at best laterally that is east. I mean it would be from east to west He does not move north what you know, he does not move north and and and compromise his safety That's on the video and that I'm thankful. That's what it shows Thank you. Thank you Thank You counsel cases submitted counselor excused will be in recess till 830 tomorrow morning nine